UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES, ex rel., MICHAEL
DARRIG,

        Plaintiff,

           v.

MEDICAL CONSULTANTS NETWORK,
INC., a Washington corporation,

        Defendant.

Civil No. 04-650-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff, a private individual, brings this suit under the False Claims Act (FCA). *See* 31

U.S.C. § 3730, *et seq*. Under the FCA, a plaintiff or "relator" may assert what is known as a "*qui*

*tam* action" on behalf of the United States government against any individual or company

believed by the relator to have knowingly presented a false or fraudulent claim to the federal

government. A successful relator in such an action shares thirty percent of the recovered

judgment with the government. *See* 31 U.S.C. § 3730(d). By these means, an incentive to act is

Page 1     Opinion and Order

provided for individuals who suspect that fraud is being perpetuated against the government. *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 742 (9th Cir. 1995).

Plaintiff is a federal employee who filed a worker's compensation claim with the United States Department of Labor (DOL). Pursuant to this claim, defendant Medical Consultants Network (MCN), a private company, was engaged by the DOL to arrange for independent medical examinations (IMEs) of plaintiff. Plaintiff filed this complaint against defendant MCN under seal on May 12, 2004, in accordance with the *qui tam* provisions of the FCA, alleging that certain of MCN's billings to the DOL were unlawful and illegal and in violation of the FCA. Pl.'s Complaint at pp. 4-6.

On November 2, 2004, United States Attorney Karen J. Immergut and Assistant United States Attorney Robert D. Nesler filed the United States' Notice of Election to Decline Intervention in plaintiff's action. Plaintiff has instead pursued this matter under the FCA as a relator. Defendant MCN was served with plaintiff's Complaint on February 25, 2005.

## PENDING MOTION

Defendant moves for summary judgment. Oral argument on this motion was heard on August 16, 2006. For the following reasons, defendant's motion is granted.

## STANDARDS

## 1.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id*. at 324.  Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions:  1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party;  2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party.  *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).  When different ultimate inferences can be reached, summary judgment is not appropriate.  *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial.  *Id*.

At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations.  These determinations are the province of the fact finder at trial.  *Id., see also Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

## 2.    STANDARDS FOR FCA CLAIMS

The FCA "provides penalties for one who 'knowingly presents . . . a false or fraudulent claim" to the government, 31 U.S.C. § 3729(a), and incentives to whistleblowers who expose the fraud." *Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992), also citing 31 U.S.C. § 3730. A *prima facie* case under the FCA requires proof that: (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent.  31 U.S.C. § 3729(a)(1).

> What is crucial – and what must be proven at trial – is that the [defendant] knew that the information was false.  The statute emphasizes that the act, for which the civil claim may be filed is to "knowingly" present or cause to be presented "a false or fraudulent claim," 31 U.S.C. § 3729(a)(1), or to "knowingly" make, use or cause a false record or statement to be made to get a false or fraudulent claim paid, *Id*.(a)(2), or to "knowingly" make, use, or cause a false record or statement to be made to "decrease an obligation" to pay the government. *Id*. (a)(7).  The emphasis on "knowing" and "knowingly" is reinforced by their statutory definitions.  *Id*.(b).

*United States ex rel. Hagood v. Sonoma Co. Water Agency* (*Hagood I*), 929 F.2d 1416, 1421 (9th Cir. 1991).

To survive summary judgment in a *qui tam* action, a plaintiff must produce evidence sufficient to support a reasonable inference of the making of a false claim.  *United States ex rel. Hagood v. Sonoma Co. Water Agency* (*Hagood II*), 81 F.3d 1465, 1477 n.21 (9th Cir. 1996)

(internal quotations and citation omitted).  Put more succinctly, "[A] violation of the False

Claims Act requires scienter."  *Id.* at 1477.

The *Hagood II* court specified how the requisite scienter must be established by a relator

in a *qui tam* action:

To establish the type of scienter so required, a relator must show:

that a person, with respect to information –

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information,

and no proof of specific intent to defraud is required.

*Hagood II*, 81 F.3d at 1477-78, citing 31 U.S.C. § 3729(b); *Wang,* 975 F.2d at 1420; *see also*

*Hagood I*, 929 F.2d at 1421 ("[t]he requisite intent is the knowing presentation of what is known

to be false").

As the *Hagood II* court summed up:

The False Claims Act, to repeat, requires a showing of knowing fraud.
The requisite intent is the knowing presentation of what is known to be false, as
opposed to innocent mistake or mere negligence.  Bad math is no fraud, proof of
mistakes is not evidence that one is a cheat, and the common failings of engineers
and other scientists are not culpable under the Act.  The statutory phrase "known
to be false" does not mean "scientifically untrue;" it means "a lie."  Likewise, the
statutory phrase "known to be false" does not mean incorrect as a matter of proper
accounting methods, it means a lie.

*Hagood II*, 81 F.3d at 1478 (some internal quotations and citation omitted); *see also United*

*States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815-16 (9th Cir. 1995) (the requirement

"known to be false" does not mean scientifically untrue, it means a lie).

**RELEVANT BACKGROUND**

Plaintiff Michael Darrig (hereinafter plaintiff or relator) is a federal employee who filed a worker's compensation claim with the DOL's Office of Worker's Compensation Program. Pl.'s Complaint at ¶ 1.  As noted above, the DOL retained defendant MCN to conduct IMEs.

The first contract between DOL and MCN was formed in 1998, and MCN submitted billings to the DOL for exams performed pursuant to this contract until mid-2003.  Pl.'s Complaint at ¶ 5.  Among the qualifications required for physicians under the 1998 contract was that all physicians had to be Board-certified.  Df.'s Ex. A at p.C-3.

On October 2, 1999, at the request of the DOL, defendant MCN scheduled an IME for plaintiff under the terms of the 1998 contract.  This examination was conducted by Dr. Cathleen Farris, now deceased, and occurred in Portland, Oregon.  At the time of this examination, Dr. Farris had an active medical license in the State of Oregon.  Plaintiff alleges that Dr. Farris was not Board-certified when she examined plaintiff, as was required by the 1998 contract between the DOL and defendant MCN.

The contract between the DOL and MCN was renewed in September 2003.  Under the terms of the 2003 contract, physicians performing IMEs were required to hold "unrestricted licenses to practice medicine in the state in which the IMEs were performed, and had to be engaged in an active medical practice, requiring at least 240 hours of direct patient care over the previous twelve months."  Df.'s Ex. B at pp. C-3 and C-4.

On November 24, 2003, at the request of the DOL, defendant MCN scheduled another IME of plaintiff.  This examination was pursuant to the terms of the 2003 contract and was conducted by Dr. Stephen Zinmeister in Portland.  At the time of this examination, Dr.

Zinmeister's Oregon license was in inactive status. Doctor Zinmeister acknowledged that he had not seen patients since 1987. Plaintiff contends that Dr. Zinmeister was unqualified to perform IMEs under the 2003 DOL contract.

A third physician identified in this suit is Dr. Joseph Sacamano, who is licensed in the state of Washington. Doctor Sacamano obtained a "retired/active no comp" license in Washington in December 2002. He obtained "active status" for his license in 2004.

Although plaintiff was never examined by Dr. Sacamano, plaintiff asserts that defendant MCN assigned other IMEs to Dr. Sacamano during 2002, 2003, 2004 and 2005. Plaintiff alleges that Dr. Sacamano was not qualified under the 2003 DOL contract to receive compensation for IMEs performed prior to January 2004.

The DOL paid defendant MCN's invoices for the examinations of plaintiff conducted by Drs. Farris and Zinmeister. The DOL has presumably paid for IMEs of other individuals performed by Drs. Zinmeister and Sacamano, as well.

Defendant acknowledges that it strives to maintain a policy that the IMEs it schedules are performed by physicians who hold active licenses for the state in which the examination is performed. Df.'s Memorandum in Support of Motion for Summary Judgment at 2. Defendant concedes that Dr. Zinmeister lacked an active license during his examination of plaintiff on November 24, 2003.

Plaintiff contends that MCN's billings to the DOL for IMEs performed by Drs. Farris, Zinmeister and Sacamano "constitute false claims submitted to the United States government" and were unlawful and illegal under the FCA.

///

Page 7    Opinion and Order

## ANALYSIS

Defendant is entitled to summary judgment because this *qui tam* plaintiff fails to "produce sufficient evidence to support an inference of fraud" and because all reasonable inferences defeat plaintiff's claims. *See Wang*, 975 F.2d at 1420, citing *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). As noted above, an actionable violation of the FCA requires a showing that the alleged violator has "actual knowledge" of submitting a false or fraudulent claim for payment or approval, or "acts in deliberate ignorance of the truth or falsity" of a false claim, or "acts in reckless disregard of the truth or falsity" of a false claim. 31 U.S.C. § 3729)(b). Innocent mistake or mere negligence is a valid defense to the criminal charge or civil complaint. *Wang*, 975 F.2d at 1420, quoting *Hagood I*, 929 F.2d at 1421; *see also United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (the FCA's intent is not to punish honest mistakes or incorrect claims submitted through mere negligence).

Plaintiff has scrutinized MCN's practices. This scrutiny has revealed a possibility that an indeterminate number of IMEs could have been assigned to physicians whose full compliance with the contractual obligations owed by MCN to the DOL could be questioned. While it is true that the scienter requirement in asserting a FCA violation is "something less than that set out in the common law," where "defraud" suggests "the deprivation of something of value by trick, deceit, chicane or overreaching," it also is true that, as in common law, innocent mistakes and negligence fail to constitute offenses under the Act. *Wang*, 975 F.2d at 1420, quoting *McNally v. United States*, 483 U.S. 350, 358 (1987) (internal quotations and citation omitted).

Here, the possibility of non-compliance with the qualification requirements mandated by the DOL's 1998 and 2003 contracts that plaintiff has unearthed gives rise to reasonable

inferences of mistake or negligence on the part of MCN. There is no evidence presented of any greater culpability on MCN's part, however.

Assuming (without deciding) that, as alleged by plaintiff, MCN's invoices to the DOL for IMEs contained technical qualification errors or sought payments for services performed by physicians who failed to comply with the DOL's requirements, there are nevertheless no grounds for inferring that submission of such invoices should be construed as violating the FCA. Plaintiff has made no showing that MCN had actual knowledge of false information, or deliberately ignored the truth or falsity of the information, or recklessly disregarded the truth or falsity of the information. *See* 31 U.S.C. § 3729(b).

Without evidence that MCN either lied or was reckless regarding the truth or deliberately ignored the truth, plaintiff's *qui tam* efforts are insufficient. *See Hagood II*, 81 F.3d at 1478; *Anderson*, 52 F.3d at 815-16.

Moreover, the FCA also requires that damages be proven by a preponderance of the evidence. 31 U.S.C. § 3731(c). Even if plaintiff could establish that MCN "lied" for the purpose of obtaining federal funds from the DOL, the measure of appropriate damages would be the amount paid by the government "by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Ekelman & Assocs., Inc.*, 532 F.2d 545, 550 (6th Cir. 1976), citing *United States v. Woodbury*, 359 F.2d 370 (9th Cir. 1966). The reasonable inference is that the DOL would have paid defendant MCN's bills for the challenged examinations even had DOL known that the examining doctors' credentials could be challenged for technical non-compliance with the 1998 or the 2003 contracts with MCN.

Page 9    Opinion and Order

There is no evidence presented that the value of the challenged examinations was materially diminished by the status of Dr. Farris's Board certification efforts or the inactive or retired active statuses of the licenses held by Drs. Sacamano and Zinmeister.  There is no evidence that the DOL overpaid for the examinations as a result of the technical status of these doctors' qualifications.

Further, plaintiff offers no evidence that the challenged doctors were unable to perform adequate IMEs, or that the effectiveness or value of their services was somehow limited as a result their alleged non-compliance with the contractual requirements at issue.  Certainly there is no evidence that the status of these doctors' qualifications resulted in fraudulent conduct against the government.

In absence of any evidence that the inherent values of the challenged IMEs was compromised, plaintiff is unable to establish any measurable damages by the preponderance of the evidence.  Accordingly, for these reasons as well, plaintiff's claim must fail as a matter of law.

**CONCLUSION**

For the reasons provided above, defendant's Motion for Summary Judgment [25] is granted in its entirety.  After interpreting all material facts and issues of fact presented in a light favorable to plaintiff, there is no evidence or inference that the DOL's payments to MCN for IMEs performed by Drs. Farris, Sacamano or Zinmeister were improper, fraudulently induced or erroneous because of purposeful misconduct, deliberate indifference, or reckless disregard of the truth on the part of MCN.

Rather, the uncontroverted evidence establishes that plaintiff may have discovered a *de minimis* number of unintentional incidents of non-compliance with applicable requirements of the contracts MCN entered into with the DOL.  There is no evidence upon which any reasonable jury could conclude that MCN submitted knowingly false representations or acted in deliberate ignorance – or reckless disregard – of the truth or falsity of the information at issue regarding the technical qualifications of Drs. Farris, Sacamano or Zinmeister.  Accordingly,  defendant's Motion for Summary Judgment [25] is granted.  This action is dismissed with prejudice.

      IT IS SO ORDERED.

DATED this __2__ day of November, 2006.


                           _____/s/ Ancer L. Haggerty_____
                                   Ancer L. Haggerty
                              United States District Judge